Argued and submitted May 20, affirmed August 3, 1983

In the Matter of the Adoption of
Joseph Robert Gauthier, a Child.

WALMER et al,
*Respondents,*

*v.*

GAUTHIER,
*Appellant.*

(A 82-6-5; A26408)

667 P2d 537

J. Michael Alexander, Salem, argued the cause for appellant. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Charles A. Moore, Gladstone, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a contested adoption case in which father had not consented to the adoption. He appeals from an order granting respondents' petition for adoption. ORS 109.324.[1] The issue is whether there is clear and convincing evidence to support the trial court's finding that father had wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year preceding the filing of the petition. Our review is *de novo.*

Father and mother were married in 1970 and divorced in 1979. They have two children, Jonathan, born in 1973, and Joseph, born in 1976. Joseph is the subject of the petition. In the dissolution decree, father was awarded custody of Jonathan and mother was awarded custody of Joseph. Father was awarded reasonable visitation with Joseph and was ordered to pay mother $125 monthly child support for Joseph.

Father made payments in September and October, 1979; however, when he went to mother's residence in November to deliver that month's payment, he was informed that mother no longer lived there. Mother and Joseph had moved in with the Richardsons. In November, 1979, mother and Joseph moved with the Richardsons to Port Orchard, Washington, where they stayed until near the year's end. The Richardsons and Joseph then moved to Clackamas, Oregon. Mother remained in Port Orchard about three weeks longer to complete her employment. She then joined Joseph in Clackamas. She testified that she found Joseph in a poor emotional state, and she began considering the possibility of his adoption.

---

[1] ORS 109.324 provides:

"If either parent is believed to have wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption and such parent does not consent in writing to the adoption, there shall be served upon such parent a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. Upon hearing being had, if the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent. * * *"

Mother agreed to let the Stewarts, Mr. Richardson's employers, attempt to find adoptive parents for Joseph. Their first placement was not successful. Respondents had heard of Joseph, and they approached the Stewarts about adoption. After several visits, respondents were permitted to take Joseph home. Although he had emotional problems, the placement was successful. Witnesses testified that his behavior had improved significantly, and he seemed happy in respondents' care.

In February, 1980, mother agreed to the adoption by respondents. Shortly thereafter, mother and the Richardsons moved to Camas, Washington, where they lived until May or June, 1980, at which time they moved to Tehachapi, California. In May, 1980, mother's attorney sent a consent-to-adoption form to father in California, explaining that mother had consented to the adoption because, among other things, she was having difficulty caring for Joseph due to father's failure to pay child support.[2] About ten days later mother's attorney wrote again, seeking return of the consent. Father's attorney responded June 5, requesting information about Joseph's whereabouts and indicating that father wanted Joseph's custody. On July 21, father's attorney again wrote to mother's attorney requesting information on Joseph's whereabouts and threatening a contempt action. That same day his attorney wrote father:

"* * * * *

"If you wish to pursue a child custody action in connection with Joseph, this could be filed with the San Bernardino Court, and if the matter contained in [mother's attorney's] letter to you of May 21, 1980, is correct, you would stand an excellent chance to gain such custody.

"* * * * *."

On August 4, mother's attorney wrote father's attorney, explaining that he had not seen mother recently but that her last known address was 209 NW 16th Street, Camas, Washington. Father made no attempt to contact her at that address; nor did he follow up on his attorney's suggestions that he seek

---

[2] It appears that the same attorney represented mother and respondents. The exact nature of that representation is not clear from the record.

custody of Joseph or try to discover the child's whereabouts through a contempt proceeding.

Respondents filed this petition for adoption on June 8, 1982, alleging mother's consent and father's wilfull desertion or neglect. Father objected and requested custody of Joseph. After finding that father had wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for Joseph for one year preceding the filing of the petition, ORS 109.324, the trial court granted the petition over father's objection.

Father argues that his failure to pay child support is excused because of his inability to locate mother and Joseph. The record supports father's contention that he made reasonable efforts in November, 1979, to locate her. Unable to do so, he discontinued child support payments. The record is not clear why, when mother's attorney notified father in May, 1980, that she was considering adoption, in part because of his failure to pay support, he did not resume payments *at that time.*

Father testified that he earns $14 hourly and has been working regularly since the 1979 dissolution. He had paid no child support since October, 1979. He did not seek legal custody of Joseph, nor did he take any significant steps to discover Joseph's whereabouts. He did not attempt to contact mother at her Camas address in August, 1980; nor did he come to Oregon to attempt to find Joseph. Father testified that he had had his sister in Oregon inquire about Joseph at Oregon welfare and Childrens' Services Division offices. If so, those were the only attempts that he made after his attorney first contacted mother's attorney in July, 1980.

Father argues that his failure to contact mother after being notified of her Camas address should be excused, because mother had already moved from that address. But the results of father's efforts are not in issue; rather, we look to his *intent.* We discern that intent from his statements and conduct and from the surrounding circumstances. *Street v. Gibson,* 60 Or App 768, 655 P2d 604 (1982). Father did not know that mother had moved from Camas or that any sincere attempt to locate her there would be futile. He did not follow up on his attorney's suggestion that he compel disclosure of Joseph's whereabouts by contempt. Neither did he seek the change of

custody that his attorney indicated would probably be successful. His mere statement that he desired custody of Joseph, without concomitant action, is not enough to counteract the other clear and convincing evidence of his intent to abandon Joseph. His failure to enforce his legal rights for two years after receiving information that Joseph's adoption was contemplated is strong evidence of his desertion. *See Cramer v. Leistikow,* 37 Or App 539, 588 P2d 53 (1978).

From August, 1980, until after the petition was filed, father had no contact with mother or Joseph. On June 8, 1982, respondents filed the petition. At the hearing on October 11, 1982, father testified that he was concerned about the care that mother could provide for Joseph as early as 1979, but that he was unable to get away from his work for even one day. He testified that he did take some steps to find Joseph, but everywhere he turned he was told to "get an attorney." Although he was financially secure, he testified that he did not get an attorney in Oregon prior to being contacted by an adoption worker in San Bernardino, California, about two months prior to the hearing.

In *Wilcox v. Alexander, et ux,* 220 Or 509, 519, 349 P2d 862 (1960), the Supreme Court said:

"The record has been examined with care. In the final analysis, however, we must be much guided by the findings of the able trial judge. In matters of this nature, involving the most basic human values and emotions, the character of the witness and the meaning of his testimony can best be gleaned from the demeanor and apparent sincerity of the witness. * * *"

We conclude that the trial court's order is supported by clear and convincing evidence in the record.

Affirmed.