Argued and submitted October 4, 1989, the decision of the Court of Appeals reversed, the decree of the circuit court vacated and remanded for further proceedings November 8, 1990

In the Matter of the Adoption of
Christine Fanning, a Minor.

Ermund ZOCKERT
and Mona Zockert,
*Respondents on Review,*

*v.*

Robert FANNING,
*Petitioner on Review.*

(TC 8805-63105; CA A49299; SC S36272)

800 P2d 773

Leilan J. Greer, Portland, argued the cause for the petitioner on review. With her on the petition were Nancy J. Snow and Family Law Center, Portland.

Thomas Boardman, Portland, argued the cause for respondents on review. On the response were Gregory S. Oldham and Boardman & Oldham, Portland.

Stephen K. Bushong and Miller, Nash, Wiener, Hager & Carlsen, Portland, filed a brief on behalf of *amicus curiae* ACLU Foundation of Oregon, Inc.

Before Peterson, Chief Justice, and Linde,** Carson, Jones,*** Gillette, Van Hoomissen and Fadeley, Justices.

** Linde, J., retired January 31, 1990.
*** Jones, J., resigned April 30, 1990.

FADELEY, J.

## FADELEY, J.

At issue in this private adoption case are: (1) the applicable standard of proof for terminating a parent's status as the parent of a child subject to the adoption, and (2) the right of that parent, if indigent, to state-paid counsel.

Mr. and Mrs. Zockert petitioned to adopt Christine Fanning, alleging that father had "abandoned said child."[1] The child's mother, who previously left the child in the care of the Zockerts, consented. Her husband, father of the child, contested the adoption by appearing, as ordered, to show cause why the adoption should not be granted.

At the show cause hearing the trial court declined to honor repeated requests by father for an appointed lawyer and for a continuance to obtain counsel. After a brief hearing, that court terminated father's parental rights and decreed the adoption.[2] The Court of Appeals, without an opinion, affirmed. 96 Or App 769, 775 P2d 346 (1989). We reverse.

At the beginning of and again near the close of the hearing, father asked for appointed counsel or a continuance to obtain counsel. Father made the same requests at four other points during the brief hearing. On one occasion father said to the court, "This is not right. This is not fair at all. * * * I am being railroaded in this case."

The trial court made four points in response to father's requests for counsel. The court advised father that the form of indigency affidavit submitted on his behalf (and accepted by the court as accurate) was for use in waiving filing fees, not for appointment of counsel. The court noted that this case was a civil proceeding, not a criminal charge. The court

---

[1] ORS 109.324 in part provides:

"Upon hearing being had, if the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent."

[2] That court entered no specific findings that the child's father "wilfully deserted or neglected" the child or that he did so without just and sufficient cause. The trial court's decree states only, "[I]t further appearing to the court that the parental rights of [father] should be terminated." The judge stated orally only that "I'm going to order that the parental rights be terminated."

inquired of opposing counsel if he knew of any statutory mechanism for appointing counsel "in this matter." Finally, the court told father, "you have known for some time[3] that you were going to need a lawyer. * * * [I]f I were to postpone it, you still wouldn't have any way of [obtaining a lawyer]." To the last point father responded, "Postpone it. I'll go borrow the money somewhere, and I will hire an attorney."[4]

Testimony at the hearing disclosed that during the period that the Zockerts had custody of the child, father attempted to contact her through his relatives while he was unable to visit personally. There is evidence that these attempted contacts were rebuffed. On the other hand, father admitted that during a four-month period when he was employed and could have visited the child, he did not visit or attempt to provide support.[5] The record contains no indication of what standard of proof the court applied, although petitioners asserted applicability of a preponderance standard, and the unrepresented father did not respond.

Our analysis of the issues — right to counsel, paid by the state if necessary, and proper standard of proof in adoptions — requires consideration of the nature and effect of an adoption decree in Oregon.

## NATURE AND EFFECT OF ADOPTION

Adoption was unknown to the common law; the basis and results are conferred by statute. *In re Frazier's Estate,* 180 Or 232, 249, 177 P2d 254 (1947); *Long v. Dufur,* 58 Or 162, 170, 113 P 59 (1911); *Furgeson v. Jones,* 17 Or 204, 217, 20 P 842 (1888); 2 CJS 420-21, *Adoption of Persons.* The state is a party

---

[3] Father contended that his incarceration, during the time the petition to adopt and show cause order were pending, was a mistake and not his fault. He claimed to have documents in his hand in the courtroom which absolved him. But he did not offer them in evidence and the judge made no inquiry. Father also explained his experience that a person in custody was not able to take steps toward obtaining an attorney in a civil, as opposed to a criminal, matter.

[4] Shortly thereafter, father was able to obtain counsel for an appeal who have stated in the record that no fees are being charged.

[5] *See Omlie ex ux v. Hunt,* 211 Or 472, 482, 316 P2d 528 (1957) (mere failure to support, when the child is otherwise receiving adequate care, is not proof of desertion nor necessarily of wilful neglect, although relevant evidence on those questions), interpreting former ORS 109.320, now replaced by ORS 109.324. The latter statute, at note 1 above, requires a year of desertion or neglect.

to all adoptions. *In re Flora's Adoption,* 152 Or 155, 159, 52 P2d 178 (1935).

■ In an adoption, a court is asked to terminate every right and interest of the natural parent. *Simons et ux v. Smith,* 229 Or 277, 281, 366 P2d 875 (1961). ORS 109.430; ORS 109.381.[6]

■ In an adoption proceeding, an Oregon court must first determine that a parent consents or that there is a statutory substitute for consent before it may turn to the second question of whether the requested adoption should, in the best interests of the child, be granted. As the court stated in *Simons et ux v. Smith, supra* at 285, "Once a parent appears and objects, his objection is binding, unless by giving attention to the requirements of at least one other statute which sets forth a recognizable and defensible ground for cutting off the natural rights of parents the trial court can properly conclude that the objector has no further rights." *Accord, Moody v. Voorhies,* 257 Or 105, 109, 475 P2d 579 (1970).

Concerning the pivotal role of consent or a substitute for it in adoptions, *Strobel v. Garrison,* 255 Or 16, 459 P2d 1001 (1969), *reh den* 255 Or 29, 464 P2d 688 (1970), held that consent to adopt, even when given to an adoption placement agency, may be withdrawn, absent estoppel, before a decree is entered or before a statutory time period runs. *Hughes v. Aetna Casualty Co.,* 234 Or 426, 383 P2d 55 (1963), held that a decree of adoption, entered 34 years earlier, was void because the child's mother gave no consent and no notice was served on her. Consent of a foundling home agency was, absent the parent's consent, ineffectual.

The lesson drawn from these cases is that termination of parental rights is the first step or stage of a two-stage proceeding, whether the two stages are separated, as they are

---

[6] ORS 109.430 provides in part:

"It is the policy of this state that adoption is based upon the legal termination of parental rights * * *."

ORS 109.381 provides in part:

"(3) After the expiration of one year from the entry of the decree of adoption * * * it shall be conclusively presumed * * * that the child became the lawful child of the adoptive parents or parent at the time when the decree of adoption was rendered * * *."

where ORS chapter 419 is used, or combined, as they are in ORS chapter 109 adoptions such as this one.

## ASSISTANCE OF COUNSEL

The pioneers who adopted the Oregon Constitution clearly had in mind that assistance of counsel was among the privileges of Oregon citizenry.[7] Events since statehood only reinforce the strength of entitlement to that assistance.

Fifty-eight years ago the United States Supreme Court declared:

> "If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be denial of a hearing, and, therefore, of due process in the constitutional sense."[8]

Between that declaration of a federal due process right to assistance of counsel "employed by and appearing for" a litigant and our decision today, two events particularly significant to resolution of this case occurred. First, the United States Supreme Court decided that in parental termination proceedings initiated by a state, Fourteenth Amendment due process may require that counsel be appointed for a parent. The Court held that "the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings [is] to be answered in the first instance by the [state] trial court, subject, of course, to appellate review." *Lassiter v. Department of Soc. Serv. of Durham Cty.,* 452 US 18, 32, 101 S Ct 2153, 2162, 68 L Ed 2d 640, 652 (1981).

Second, the Oregon legislature enacted Oregon Laws 1987, chapter 803, section 21. That act requires that indigent parents in juvenile court parental termination proceedings be provided with assistance of counsel at their request. *See* ORS

---

[7] *See, e.g.,* the contemporaneous treatment of the privileges of right to counsel in civil cases spelled out in Deady, General Laws of Oregon 1845-1864 (1866), civil Code, sections 1000 and 1001, 397-98.

[8] *Powell v. Alabama,* 287 US 45, 69, 53 S Ct 55, 64, 77 L Ed 158, 170-71 (1932); *see also Chandler v. Fretag,* 348 US 3, 10, 75 S Ct 1, 99 L Ed 4 (1954) (quoting *Powell* with approval).

419.525(2).[9] The legislature calls for appointed counsel for indigent parents generally, not just on a case-by-case basis, in termination proceedings pursuant to ORS chapter 419.

Today this court decides whether an Oregon parent, unable to employ counsel, is entitled to assistance of state-paid counsel when threatened with permanent loss of all parental rights in a contested adoption proceeding pursuant to ORS chapter 109.

## A. *Equal Privileges, Article I, Section 20*

■    Father contends that federal constitutional guarantees and the equal privileges and immunities provision of Oregon Constitution, Article I, section 20,[10] require that the state provide him with counsel. This court decides cases upon sub-constitutional grounds, where available, even though litigants argue only constitutional errors.[11] Likewise, the state constitution is consulted before the federal. Here, ORS chapter 109, relating to adoptions, is silent on the right to counsel and no prior decision of this court covers the question presented. We turn to consideration of father's state constitutional claim.

Father's Article I, section 20, argument is based on the statutory mandate of ORS 419.525(2) to provide counsel in parental termination proceedings instituted in juvenile court. Simply stated, father contends that he was treated unequally under the law of Oregon when he was denied assistance of counsel in a proceeding that was, as to him, precisely like a proceeding to which ORS 419.525(2) applies,

---

[9] ORS 419.525(2) provides:

"If the parents are determined to be indigent by the court, and request the assistance of appointed counsel, the court shall appoint an attorney to represent them at state expense."

This court recently assumed that the statutory language meant that appointed counsel must be adequate, and that the standard of adequacy hinges on whether the proceeding was "fundamentally fair." *State ex rel Juv. Dept. v. Geist,* 310 Or 176, 185, 187, 796 P2d 1193 (1990).

[10] Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

[11] *Planned Parenthood Assn. v. Dept. of Human Res.,* 297 Or 562, 564, 687 P2d 785 (1984); *State v. Lowry,* 295 Or 337, 343, 667 P2d 996 (1983).

and that Article I, section 20, makes such unequal treatment unconstitutional. His request is not that this court strike down the law which grants a privilege of assistance by counsel to other parents whose parental rights are in jeopardy, but rather that the privilege be extended to him as a parent equally in jeopardy of loss of his parental rights.

The ORS 419.525(2) requirement — to appoint counsel for indigent parents in juvenile court termination proceedings — represents a legislatively recognized right to assistance of counsel in such proceedings. The privilege of counsel, if a parent employs one, is a given upon which the statute builds to assure counsel in all such cases. Similarly, no statute or rule prohibits assistance of counsel in a private adoption under ORS chapter 109. If father had come to court with counsel, we know of no basis upon which the trial judge could deny him such assistance. Because he could not employ his own counsel, the question thus becomes: Does Oregon Law require that counsel be appointed for him?

### (1)  *Upon the Same Terms — Equally*

The 1987 legislative act, although on its face applying only to ORS chapter 419 parental terminations, addresses an action identical to the first-step in ORS chapter 109 adoptions. In both proceedings, a trial judge may invoke the state's power permanently to terminate parental rights of birth parents. There is no question that giving an indigent parent an opportunity to receive assistance of appointed counsel to protect parental rights is a "privilege" within the meaning of the Article I, section 20, guarantee.

That a person's parental rights are challenged in an ORS chapter 419 proceeding, as opposed to an ORS chapter 109 proceeding, is of no practical consequence to that parent. The challenge is the same in both proceedings — a challenge to presently enjoyed parental rights. ORS 109.430 confirms this similarity by expressly recognizing that "adoption is based upon the legal termination of parental rights." At the time of the decree of adoption in this case, the elements of a parental default justifying termination were similar. *See* Or Laws 1989, ch 907, § 2. They still are, except that one statute permits termination after six month's neglect, the other requires a year. We conclude that the scope of the constitution's qualifying words, "upon the same terms," in the context

of this case, would cover all parents threatened by permanent termination of parental rights.

The Zockerts make no contention that the termination of parental rights under a chapter 419 proceeding is inherently or factually distinguishable from a parental rights termination under chapter 109. That is, they do not contend that the legislature had in mind a distinction between the two proceedings when it provided a mechanism for assuring the right to counsel in one type of termination but was silent as to the other. Nonetheless, in the interest of complete analysis, we consider whether such a distinction was made.

The state is involved similarly in both proceedings. A state agency, Children's Services Division, plays a significant role in adoptions under ORS 109.310(4) and 109.316, and also serves the juvenile court under chapter 419. No distinction may be founded upon the fact that a private person initiates an adoption. Under ORS 419.482, parental terminations need not be initiated by the state. No other reasonable and relevant distinction between the two proceedings to terminate parental rights occurs to us within the context of the Article I, section 20, claim made by father in this case.

As noted above, the 1987 legislature consciously chose to declare that assistance of counsel is part of the process due to a parent threatened with permanent termination of parental rights. If the legislature had intended to create a case-by-case right of counsel, it knew how to do so. The legislature distinguished in just that fashion between parental terminations and other less drastic governmental intrusions in family matters. *Compare* ORS 419.525(2) *with* ORS 419.498(2)(d) (in juvenile court hearings, "[c]ounsel shall be appointed for the parent or legal guardian whenever the nature of the proceedings and due process so require * * *"). Instead, the legislature went beyond the mandate of *Lassiter* by ensuring aid of counsel to all indigent parents faced with a chapter 419 termination proceeding.

There is no indication that those parental terminations which are the first stage of a statutory adoption proceeding were called to the legislature's attention when it made the aid of counsel universally available in chapter 419 terminations. Legislative omission to amend a related statute — *i.e.,* legislative silence — is not, in this instance, an indication that

the legislature intended to except parental rights terminations sought via adoptions from its decision that assistance of counsel is part of the process due when a parental termination is sought under ORS 419.525.[12] No governmental policy choice can be said to support the unequal treatment, because no policy choice was made.

■    This is, therefore, not a case where we are asked to apply Article I, section 20, to a "class" created by the challenged law itself, *see Sealey v. Hicks,* 309 Or 387, 397, 788 P2d 435 (1990), nor to a "class" composed of persons who are not otherwise identifiable until they are injured, *see Hale v. Port of Portland,* 308 Or 508, 525, 783 P2d 506 (1989). Instead, parents are identifiable, apart from any statute, by their personal characteristics as such. *See Hale v. Port of Portland, supra,* 308 Or at 525. Even if one refines the description of parents by limiting the group to those parents who are threatened with permanent loss of their parental rights, we need not resort to the language of a statute to sort them out from the mass. Parenthood, a personal characteristic, identifies each and every one. Parents are entitled to be treated upon the same terms, equally, under Article I, section 20.

### (2) *Granting to Any Citizen Privileges Not Belonging to All Citizens Equally*

■    Our preceding discussion explains and supports the disposition of the right-to-counsel issue which now follows. The legislative grant of the opportunity for a parent to benefit from the privilege of assistance by counsel in one mode of termination of parental rights requires that the opportunity to exercise that privilege be extended to all similarly situated parents directly threatened with permanent loss of parental rights.

■    It is inescapable that denial of father's request for appointed counsel, made absent any further inquiry about indigency in fact, denied him equality of the privilege of counsel which is granted, upon the same terms, to other parents.

---

[12] This factual aspect — no conscious governmental choice to deny a privilege or immunity — makes this case different from *Hale v. Port of Portland,* 308 Or 508, 783 P2d 506 (1989), and *Sealey v. Hicks,* 309 Or 387, 788 P2d 435 (1990). Further discussion of the factual difference is found in Schuman, *The Right to "Equal Privileges and Immunities": A State's Version of "Equal Protection,"* 13 Vt L Rev 221 (1988).

*See State ex rel Adult and Family Ser. v. Bradley*, 295 Or 216, 666 P2d 249 (1983) (requiring equal treatment of all children in need of their father's support); *Hewitt v. SAIF*, 294 Or 33, 653 P2d 970 (1982) (requiring equal benefits to families of male and female workers killed on the job); *cf. Employment Div. v. Rogue Valley Youth for Christ*, 307 Or 490, 497, 770 P2d 588 (1989) (where distinction between religious organizations is unacceptable, unemployment tax laws "must treat all religious organizations similarly"). The state constitutional protection under Article I, section 20, was, as father contends, contravened.

### B. *The Remedy, Extension of Rights*

In *Hale v. Port of Portland, supra*, 308 Or at 525, this court stated:

> "A person who is denied what a favored class receives has standing to demand equal treatment, though this leaves an issue whether to strike down the special privilege or to extend it beyond the favored class."

In determining "whether to strike down the special privilege or to extend it beyond the favored class" (in this case, to other citizens), we commonly consider the relief sought by the "person who * * * has standing to demand equal treatment," the intentions expressed by the makers of the law granting the privilege, and whether the validity of the law granting favoritism is challengeable on grounds other than Article I, section 20. Here father seeks extension of the privilege so that he may enjoy its protective benefit; lawmakers have disclosed no intent to deny him that privilege but, rather, an intent that parents enjoy the privilege when faced with a termination; no lesser ground for challenge is present.

■ Where an impermissible classification is utilized by the legislature, we have decided in favor of equalizing privileges. *Employment Div. v. Rogue Valley Youth for Christ, supra; State ex rel Bradley, supra; Hewitt v. SAIF, supra*. We hold that the privilege of having counsel appointed in termination cases under ORS chapter 419 applies equally to terminations by adoption under ORS chapter 109.

### THE STANDARD OF PROOF

Because a new hearing is to occur in this case, we consider the issue of the appropriate standard of proof or

degree of persuasion, required for adoptions. Oregon's adoption statutes describe what facts moving parties must prove but do not specify a standard of persuasion or proof.[13] ORS 10.095(5)[14] provides no absolute mandate for standards of proof or persuasion, yet it is the only general statutory provision related to the issue. This court is free to establish a standard which the court deems will best protect the integrity and accuracy of the decision viewed in the light of the significance of the interests involved. We turn to other considerations to determine what standard the law requires.

By 1982, clear and convincing evidence was required for parental terminations in 15 states by court decision, in 15 other states by statute, and five more required its equivalent. *Santosky v. Kramer,* 455 US 745, 750 n 3, 102 S Ct 1388, 71 L Ed 2d 599 (1982). In that year the Supreme Court imbued the majority practice with constitutional status by holding that the Due Process Clause demands more than proof by a "fair preponderance of the evidence before a state may sever completely and irrevocably the rights of parents in their natural child. *Santosky v. Kramer, supra,* 455 US at 768. However, *Santosky* applied to state-initiated terminations; it was not an adoption case. Oregon Laws 1985, chapter 820, now codified in ORS 419.525(3), followed the majority rule by requiring clear and convincing evidence in chapter 419 terminations.[15] At the time the new standard was legislated, there was no indication

---

[13] However, in *Walmer v. Gauthier,* 64 Or App 157, 667 P2d 537 (1983), a "clear and convincing evidence" standard was assumed, without discussion, to apply in a contested adoption proceeding. And in *Andersen v. Crouse,* 83 Or App 216, 220 n 3, 730 P2d 1275 (1986), a post-holding footnote declares that the clear and convincing standard applies to "proceedings under ORS 109.310." The legislature has not since acted to confirm or contradict that declaration.

[14] ORS 10.095 (formerly ORS 17.250(5)), relating to instructions in jury trials, in part provides:

"[The jury] are, however, to be instructed by the court on all proper occasions:

"* * * * *

"(5) That in civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the preponderance of evidence[.]"

[15] ORS 419.525(3) provides:

"A hearing shall be held by the court on the question of terminating the rights of the parent or parents * * * [t]he facts on the basis of which the rights of the parents are terminated, unless admitted, must be established by clear and convincing evidence * * *."

that the parallel termination of parental rights as a first step in a contested adoption was called to the legislature's attention.

At hearing, counsel for the Zockerts alerted the trial judge to the issue of which standard of proof or persuasion should be applied but contended that the proper standard of proof was preponderance of the evidence. Nothing in the record indicates which standard the trial judge applied.[16]

The Zockerts cite ORS 10.095(5) and *Cook v. Michael,* 214 Or 513, 330 P2d 1026 (1958), to support their contention that proof by a preponderance is sufficient. This court in *Cook* explained that the statute called for the preponderance standard only on "proper occasions," and that some occasions called for a clear and convincing standard. 214 Or at 528. Describing standards of proof or persuasion as different degrees of proof, *Cook* noted: "In *ordinary civil cases* the degree of proof required is a preponderance of the evidence," meaning "that the jury must believe that the facts asserted are more probably true than false." *Id.* at 527 (emphasis added). Furthermore, "in some types of cases, such as those involving the issue of fraud, many courts require clear and convincing evidence," the presence of which "means that the truth of the facts asserted is highly probable." *Ibid.; see also Riley Hill General Contractor v. Tandy Corp.,* 303 Or 390, 402-03, 737 P2d 595 (1987).

Father contends, relying on *Santosky v. Kramer, supra,* 455 US at 757, that the due process clause of the Fourteenth Amendment requires application of the "clear and convincing evidence" standard.[17] In *Santosky,* the United States Supreme Court held that in a state-initiated proceeding to terminate parental rights the "clear and convincing evidence" standard "adequately conveys to the fact-finder the level of subjective certainty about his factual conclusions necessary to

---

[16] Counsel stated: "I note for the Court that while an adoption requires only a preponderance of the evidence for termination — not the clear and convincing evidentiary standard that's required in State actions — we feel we have met that additional burden, as well."

[17] Father has not advanced any arguments that the proper standard of proof is clear and convincing evidence based on sub-constitutional grounds or any provisions of the Oregon Constitution. We, nonetheless, seek a sub-constitutional basis for our ruling as a first step. *See* note 10, *supra.*

satisfy due process." 455 US at 769. Because the Zockerts, rather than the state, initiated this proceeding, *Santosky* does not, by itself, resolve the issue, even though the state is also a party to an adoption. *In re Flora's Adoption, supra.* However, we need not reach the federal due process clause to decide the standard of proof or persuasion required.

Absent federal court or state legislative direction, this court has required clear and convincing evidence in civil cases based on two rationales. One rationale involves the severity of the consequences to the litigant or, potentially, to others not parties in the case.

In *Riley Hill General Contractor v. Tandy Corp., supra,* the court relied on analytic discussions in *Mutual of Enumclaw Ins. v. McBride,* 295 Or 398, 667 P2d 494 (1983), and other cases. Based on the statutory distinction between "civil" and "criminal" cases, *Mutual of Enumclaw* enunciated a test for determining when a statutory cause of action, although characterized as civil, requires proof by the higher clear and convincing standard:

> "The 'proper occasion' for interpolating an intermediate measure of proof is in cases that are between 'civil' and 'criminal' and where what is to be established is akin to 'guilt.'" 295 Or at 405.

The *Riley Hill* court held that the standard of proof in a civil action for common-law deceit must be "clear and convincing," on the basis that a court determination that one's conduct is deceit is akin to guilt. *Id.,* 303 Or at 403, 407.

A violation of the Corrupt Practices Act must be shown by clear and convincing evidence, because the penalty potentially involves deprivation of elected office and disenfranchisement of voters, and such violation may become the subject of a criminal prosecution. *See Thornton v. Johnson,* 253 Or 342, 347-48, 453 P2d 178, 454 P2d 647 (1969) (a holding now codified at ORS 260.532(4)). Lawyer discipline, involving guilt-like stigma, requires the higher standard. *In re Lathen,* 294 Or 157, 159, 654 P2d 1110 (1982).

A second rationale turns on the reliability or trustworthiness of the available evidence. *Willbanks v. Goodwin,* 300 Or 181, 187-88, 709 P2d 213 (1985), held that a disputed

contract to make reciprocal, irrevocable wills, where both parties to the contract were deceased, must be proved by clear and convincing evidence. *See also Pantano v. Obbiso,* 283 Or 83, 87, 580 P2d 1026 (1978) (requiring clear and convincing evidence of a constructive trust after the trustee was deceased); *Ray v. Ricketts,* 235 Or 243, 250, 383 P2d 52 (1963) (evidence to support reformation of a written instrument).

■ The first rationale applies in this case. The liberty interest[18] of parenthood, more than a merely financial or contractual interest, is at stake. The fact to be established, wilful desertion of, or neglect or failure to support, one's own child without just cause, stigmatizes a parent in a way akin to guilt. The claim of abandonment or non-support may provoke criminal charges. *See* ORS 163.555 (criminal non-support); ORS 163.535 (child abandonment). Finally, there is a public interest in preserving the integrity of families, for the benefit of society and the child, which calls for persuasion at the clear and convincing level before parental status can be legally terminated, as both the *Santosky* decision, and ORS 419.525(3) recognize.

We hold that the clear and convincing standard is required in contested adoption proceedings under ORS 109.324.

## CONCLUSION

The record is too sparse for this court to render a final decision on the merits of an issue of such importance to the parties. We remand to the circuit court for further adoption proceedings.

The decision of the Court of Appeals is reversed, the decree of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings.

---

[18] *Santosky v. Kramer,* 455 US 745, 102 S Ct 1388, 71 L Ed 2d 599 (1982).