Argued and submitted May 12, reversed and remanded July 28, 2021

In the Matter of A. R. M.,
a minor child.

Thomas Ross KEFFER,
*Petitioner-Respondent,*

*v.*

A. R. M.,
proposed protected person,
*Respondent below,*
*and*

Jennifer KEFFER-McCOMAS
and Dontay McComas,
*Objectors-Appellants.*

Deschutes County Circuit Court
20PR00142; A175018

497 P3d 781

Mother and father appeal from a limited judgment appointing mother's father (grandfather) as guardian for their child, A. This case is one of four related cases involving mother, father, A, and mother's child, O. The juvenile court had taken wardship of A and O, and the Department of Human Services placed them in foster care. Grandfather sought to be appointed the guardian for A and O by filing petitions for probate guardianship. Ultimately, the juvenile court changed A's and O's permanency plans from reunification to guardianship, appointed grandfather as their guardian through the probate code, and terminated wardship and dismissed dependency jurisdiction based on the guardianship appointment. In this appeal, mother and father argue that the court could not appoint grandfather as a guardian through the probate code. *Held*: The juvenile court did not have authority to appoint grandfather as A's guardian under the probate code, because the juvenile dependency guardianship statutes establish the exclusive means by which a juvenile court may establish a guardianship for a ward that is under the exclusive jurisdiction of the juvenile court.

Reversed and remanded.

Alicia N. Sykora, Judge.

George W. Kelly argued the cause and filed the brief for appellant Jennifer Keffer-McComas.

Kristen G. Williams argued the cause and filed the briefs for appellant Dontay McComas.

Sean M. Jorgensen argued the cause for respondent. Also on the brief was Intermountain Law, PC.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

In this probate guardianship case, mother and father challenge the appointment of a guardian for their child, A. This case is one of four related cases involving mother, father, A, and mother's child, O.[1] The juvenile court had taken wardship of A and O, and the Department of Human Services (DHS) placed them in foster care. Mother's father (grandfather) sought to be appointed the guardian of A and O by filing petitions for probate guardianship. Mother and father opposed those petitions. Ultimately, the juvenile court changed A's and O's permanency plans from reunification to guardianship, appointed grandfather as their guardian through the probate code, and terminated wardship and dismissed dependency jurisdiction as to A and O.

In this case, mother and father challenge the appointment of grandfather as A's guardian, raising several arguments. We conclude that the juvenile court did not have authority to appoint grandfather as A's guardian under the probate code, because the juvenile dependency guardianship statutes establish the exclusive means by which a juvenile court may establish a guardianship for a ward that is under the exclusive jurisdiction of the juvenile court.[2] Accordingly, we reverse and remand the limited judgment establishing a probate guardianship over A.

Ultimately, mother and father raise an issue of statutory construction, which is a legal question that is not dependent on the particular facts of A's and O's circumstances. Accordingly, we recite the background and procedural facts from both the dependency cases and the guardianship

---

[1] Based on our disposition in this case, we reverse and remand the three related cases, also issued today. *See Keffer v. O. R. K.*, 313 Or App 644, 491 P3d 831 (2021); *Dept. of Human Services v. D. M.*, 313 Or App 607, 491 P3d 830 (2021); *Dept. of Human Services v. J. K.*, 313 Or App 645, 491 P3d 831 (2021).

[2] Mother and father also argue that the court violated the Interstate Compact on the Placement of Children (ICPC) when it placed A with grandfather, because grandfather resides in Idaho. Mother raises two additional challenges: that the court erred in failing to allow mother a court-appointed attorney for the guardianship proceeding and erred in failing to invite mother to fully participate in the October guardianship hearing. Because we conclude that the court could not establish grandfather's guardianship of A through the probate code, we do not reach any of mother's or father's additional arguments.

cases involving A and O only as necessary to understand the posture of this case.

In early 2018, mother and father lived with their shared child, A (who was a newborn at the time), mother's child, O, and father's child, E. In August 2018, DHS removed all three children and placed them with the same foster parents. The juvenile court took jurisdiction over the children based on admissions of mother and father.

After the children were made wards of the court, mother's father (grandfather) and his wife visited with A and O. Beginning in March 2019, grandfather was an authorized safety service provider (SSP) for mother's and father's supervised visits with all three children, which at the time were happening once or twice a month. Grandfather and his wife also had visits, including overnight visits, with A and O without mother and father. In January 2020, grandfather filed petitions to be appointed A's and O's guardian. After that, mother and father no longer wanted grandfather to act as their SSP, and they opposed the guardianship.

Rather than seeking a guardianship under the juvenile dependency code, grandfather invoked ORS 125.305, a protective proceeding that falls within the exclusive jurisdiction of the probate court. ORS 125.015(1). As required by ORS 419B.806 in the juvenile code, grandfather's probate petitions were "consolidated," as that term is used in ORS 419B.806, with the juvenile dependency matters. The court then scheduled a hearing on the guardianship petitions to occur at the same time as a combined permanency hearing for all three children, conducted in June and July 2020.

At the combined hearing, the court first took evidence on DHS's requests to change the permanency plans for the children away from reunification with the parents. The court permitted grandfather's attorney to cross-examine witnesses during that portion of the case. Before ruling on the requested change in plans, the court also took evidence for grandfather's guardianship petitions. At that point, mother's and father's respective attorneys informed the court that their appointments did not extend beyond the dependency cases to the guardianship cases. Consequently,

mother and father represented themselves for that portion of the hearing.

For the guardianship portion of the hearing, grandfather testified that he sought guardianship of A and O "to prevent those kids from going anywhere but inside the family." He also explained that he and his wife had applied with DHS to be a placement for the children and, because they live in Idaho, DHS contacted Idaho for an Interstate Compact on the Placement of Children (ICPC) agreement with Idaho. However, in July 2019, Idaho disqualified their home because grandfather's wife had an 11-year-old conviction for driving under the influence and child endangerment. As a result, he explained, the children could not be placed with him through the ICPC process.

After hearing closing arguments, the court first addressed all three of the children's permanency plans. The court changed E's plan from reunification to adoption, which we affirmed on appeal. *Dept. of Human Services v. D. M.*, 310 Or App 171, 483 P3d 1248 (2021). The court changed A's and O's plans from reunification to guardianship, which we affirmed on appeal without an opinion. *Dept. of Human Services v. J. K. (A174442)*, 309 Or App 420, 480 P3d 946 (2021); *Dept. of Human Services v. J. K. (A174443)*, 309 Or App 420, 480 P3d 946 (2021).

In preparing to address grandfather's petitions for guardianship, the court directed him to speak with the probate commissioner about what was required to enter a guardianship. Later, after addressing some additional findings needed for the permanency judgments, the court indicated that it was willing to find that grandfather was an appropriate guardian, but stopped short of making any official findings or proceeding on grandfather's petitions, expressing the view that the court did not have "jurisdiction" to proceed any further than it had already proceeded. The court noted that grandfather "will be petitioning."

Following entry of the permanency judgments that changed A's and O's plans, grandfather moved for entry of a limited judgment appointing him as each child's guardian and for dismissal of dependency jurisdiction over them. The

court held a hearing to consider grandfather's motions in October 2020.

At that hearing, the court heard extensive argument on whether it could appoint grandfather as guardian under the probate code and without an ICPC agreement with Idaho. The court ultimately concluded that it could and proceeded to make findings that grandfather sought to support that conclusion. The court further ruled that, once the guardian judgment and letters of guardianship were signed and entered, the dependency matter would be dismissed.

The court then entered limited judgments under the probate code appointing grandfather as guardian of A and O. The court also signed and entered letters of guardianship. At the same time, the court signed and entered in A's and O's dependency cases judgments terminating wardship and dismissing dependency jurisdiction. Those judgments contain the following findings:

"1.    Although the jurisdictional bases for this Court's dependency jurisdiction over the minor child continue to be present, there is no reasonable likelihood of harm to the minor child's welfare in the absence of dependency jurisdiction because the minor child will be placed under the guardianship of [grandfather], pursuant to the Limited Judgment Appointing Guardian of Minor to be entered prior to the entry of this Judgment;

"2.    Therefore, the Court's wardship of the minor child should be terminated and the Court's dependency jurisdiction over this case should be dismissed."

In this appeal, mother and father challenge the court's appointment of grandfather as A's guardian. In a separate appeal, but on the same grounds, mother challenges the court's appointment of grandfather as O's guardian. In two additional appeals, mother and father challenge the court's dismissal of the dependency cases for O and A based on grandfather's motion. In this opinion, we directly address only the parents' challenges to the court's appointment of grandfather as A's guardian and dispose of the remaining three appeals in separate opinions for those cases.

The parents' primary challenge in this appeal is that the court lacked authority to appoint grandfather as

guardian under the probate code, because the guardianship provisions in the juvenile code provide the exclusive means to establish a guardianship for a ward within the dependency jurisdiction of the juvenile court. Grandfather responds that the juvenile court could proceed as it did in this case, because ORS 419B.806 required consolidation of the juvenile and probate matters and, after consolidation, the court properly appointed grandfather pursuant to ORS 125.305 and ORS 419B.365.

Resolution of these issues requires construction of the relevant statutes. "As with all questions of statutory construction, we apply the analytical framework described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), with the 'paramount goal' of discerning the intent of the legislature." *Dept. of Human Services v. C. M. H.*, 368 Or 96, 107, 486 P3d 772 (2021). We primarily consider the text and context of the relevant statutes, but we also consider legislative history when it is useful to our analysis. *Id*. Because the legislature substantially changed the juvenile guardianship statutes in 2003, we are primarily concerned with the intent of the 2003 Legislative Assembly when it enacted those sections of the juvenile code. That is so because the primary question is whether the juvenile code guardianship statutes are the exclusive means by which a guardianship of a ward within the exclusive dependency jurisdiction of the court may be established.

Before turning to the specific guardianship statutes, we provide some additional context about the nature of dependency cases, which informs our construction of those statutes. The Supreme Court recently provided a helpful overview of the nature of dependency cases:

> "Under the modern statutory framework, the 'juvenile court' is part of the circuit court. Each juvenile court is officially the 'Juvenile Department' of the particular circuit court in which it is located, and the judges of the circuit court exercise the jurisdiction and authority of the juvenile court. * * *
>
> "Yet the juvenile court is distinct in several significant ways. As emphasized throughout this opinion, the juvenile court possesses 'exclusive original jurisdiction' over

certain cases involving a person under the age of 18. ORS 419B.100(1). * * *

"In addition, ORS chapter 419B assigns to the juvenile court unique authority over the life of a child who comes before it, beginning with the authority to determine that a particular child falls within one of the categories specified in ORS 419B.100(1)—a determination that requires the court to make the child 'a ward of the court.' * * * For a child who has been made a 'ward of the court,' the juvenile court is authorized to take a variety of actions to safeguard the ward, including directing that the ward be placed in the legal custody of persons other than the ward's parents, ORS 419B.331; overseeing the development and implementation of a permanency plan for the ward, ORS 419B.476; and even terminating the parental rights of the ward's parents, ORS 419B.500.

"Moreover, proceedings in juvenile court are conducted in ways that differ significantly from proceedings in circuit court. In particular, proceedings under ORS chapter 419B are governed by special rules of practice and procedure, rather than by the Oregon Rules of Civil Procedure. ORS 419B.800(1) * * *. And both the state and the department are expressly given the status of parties in proceedings under ORS 419B.100. ORS 419B.875(1). Thus, even when a proceeding in juvenile court addresses the type of dispute that—in a different case—would be resolved by a proceeding in circuit court, the juvenile court proceeding is governed by different rules, and the state and the department may directly participate as parties."

*C. M. H.*, 368 Or at 103-05 (footnotes omitted). Also, once a court establishes jurisdiction over a child in a dependency case, "its action must stem from the authority granted within the juvenile code." *State ex rel Juv. Dept. of Multnomah County v. Smith*, 205 Or App 152, 157, 133 P3d 924 (2006) (citing *Kelley v. Gibson*, 184 Or App 343, 349-50, 56 P3d 925 (2002)). With that in mind, we turn to the guardianship statutes in the juvenile dependency code.

Before 2003, the juvenile dependency code provided for only one type of guardianship that was not a temporary guardianship incident to custody: a permanent guardianship under ORS 419B.365 (2001), *amended by* Or Laws 2003, ch 229, § 6. That prior version of the code relied on the

procedures in the probate code for establishing the guardianship and incorporated by reference other provisions of the probate code, including the authority and duty of the guardian, letters of guardianship, and guardian reporting requirements. ORS.419B.365(2), (6) (2001). However, it also imposed additional requirements not found in the probate code, most notably that "[t]he grounds for granting a permanent guardianship are the same as those for termination of parental rights." ORS 419B.365(4) (2001). We concluded in *Kelley v. Gibson*, 184 Or App 343, 56 P3d 925 (2002), that, under that version of the statute, a juvenile court lacked authority to establish guardianships under the probate code for children with ongoing juvenile dependency cases. We stated that there is "no authority in the juvenile code that permits the juvenile court to circumvent the requirements of ORS 419B.365 [(2001)] by acting as a probate court and establishing a guardianship under the grounds in ORS 125.305." *Id.* at 350.

In 2003, the legislature made substantial changes and additions to the guardianship provisions of the juvenile dependency code. It substantially amended ORS 419B.365, added a second type of guardianship—known colloquially as a "durable" or "general" guardianship—codified at ORS 419B.366, removed all references to the probate code, and added statutes that cover the authority and duty of a guardian, entry of guardianship letters, guardianship reports, local citizen board review, modifying or vacating guardianships, and guardianship studies of the proposed guardian's home. *See* ORS 419B.365 (permanent guardianship); ORS 419B.366 (general guardianship); ORS 419B.367 (guardianship letters; guardian reports; local citizen board review; authority and duty of guardians); ORS 419B.368 (review, modification, or vacation of guardianship order); ORS 419B.369 (guardianship study); *see also* Or Laws 2003, ch 229 (SB 70). The two types of guardianships, which are set out in ORS 419B.365[3]

---

[3] ORS 419B.365 provides:

"(1) At any time following establishment of jurisdiction and wardship under ORS 419B.100, but prior to filing of a petition under ORS 419B.500, or after dismissal of a petition filed under ORS 419B.500 if it fails to result in termination of the parent's rights, a party, or person granted rights of limited participation for the purpose of filing a guardianship petition, may file, and the court may hear, a petition for permanent guardianship. If the Department of Human Services chooses not to participate in a proceeding

and ORS 419B.366,[4] have requirements for their establishment that tie into the other parts of the juvenile dependency

---

initiated by an intervenor under ORS 419B.875, the state is not foreclosed from filing a subsequent action should the intervenor's petition be denied.

"(2) The grounds for granting a permanent guardianship are the same as those for termination of parental rights.

"(3) The court shall grant a permanent guardianship if it finds by clear and convincing evidence that:

"(a) The grounds cited in the petition are true; and

"(b) It is in the best interest of the ward that the parent never have physical custody of the ward but that other parental rights and duties should not be terminated.

"(4) If an Indian child is involved, the permanent guardianship must be in compliance with the Indian Child Welfare Act. Notwithstanding subsection (3) of this section, the facts supporting any finding made to establish a permanent guardianship for an Indian child, including the finding that continued custody by the parents or Indian custodian would result in serious emotional or physical harm to the Indian child, must be established beyond a reasonable doubt.

"(5) Unless vacated under ORS 419B.368, a guardianship established under this section continues as long as the ward is subject to the court's jurisdiction as provided in ORS 419B.328."

[4] ORS 419B.366 provides:

"(1) A party, or a person granted rights of limited participation for the purpose of filing a guardianship motion, may file a motion to establish a guardianship. The motion must be in writing and state with particularity the factual and legal grounds for the motion.

"(2) Except as otherwise provided in subsection (3) of this section, the facts supporting any finding made or relief granted under this section must be established by a preponderance of evidence.

"(3) If an Indian child is involved, the guardianship must be in compliance with the Indian Child Welfare Act. The facts supporting any finding made to establish a guardianship for an Indian child, including the finding that continued custody by the parents or Indian custodian would result in serious emotional or physical harm to the Indian child, must be established by clear and convincing evidence.

"(4) In a proceeding under this section, the court may receive testimony and reports as provided in ORS 419B.325.

"(5) If the court has approved a plan of guardianship under ORS 419B.476, the court may grant the motion for guardianship if the court determines, after a hearing, that:

"(a) The ward cannot safely return to a parent within a reasonable time;

"(b) Adoption is not an appropriate plan for the ward;

"(c) The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and

"(d) Guardianship is in the ward's best interests. In determining whether guardianship is in the ward's best interests, the court shall consider the ward's wishes.

code and dovetail with the other proceedings that are conducted under the code. Thus, the 2003 legislation transparently made the guardianship proceedings under the juvenile dependency code self-contained. The question remaining is whether the legislature intended for those provisions to provide the exclusive means for establishing a guardianship for a ward within the juvenile court's exclusive dependency jurisdiction. We conclude that the legislature did so intend.

The text and context of the guardianship provisions, as described above, indicate the legislature's intention to craft proceedings and types of guardianships to fit the uniqueness of juvenile dependency proceedings. In doing so, it severed the dependency guardianship proceedings from any reliance on the probate code. That suggests that the legislature intended the juvenile dependency code guardianship proceedings to be the exclusive means to establish a guardianship for a ward within the court's exclusive dependency jurisdiction.

The legislative history of the 2003 legislation supports our reading of that text and context. Senate Bill (SB) 70 was proposed and drafted by the Juvenile Code Revision Work Group of the Oregon Law Commission. In presenting that proposed bill to the Senate Committee on the Judiciary, Lisa Kay, Chair of the Guardianship Sub-Work Group, referred the committee to the provided Guardianship Report approved by the Oregon Law Commission for the details on why SB 70 was needed. Audio Recording, Senate Committee on Judiciary, SB 70, Feb 5, 2003, at 28:30 (statements of Lisa Kay), http://records.sos.state.or.us/ORSOSWebdrawer/Record/4179280 (accessed June 30, 2021); Exhibit D, Senate Committee on Judiciary, SB 70, Feb 5, 2003. The Guardianship Report explained that the proposed bill

> "creates a general guardianship for children who are within the jurisdiction of the juvenile court and specifies standards and procedures to establish, modify, review and vacate such guardianships. This proposal also amends the existing permanent guardianship statutes to require use

---

"(6) Unless vacated pursuant to ORS 419B.368, a guardianship established under this section continues as long as the ward is subject to the court's jurisdiction as provided in ORS 419B.328."

of the same procedures for permanent guardianships as for general guardianships.”

Juvenile Code Revision: Guardianship Report (SB 70), Oregon Law Commission, Juvenile Code Revision Work Group, Nov 22, 2002, 2 (Guardianship Report). The Guardianship Report further explained that a new general guardianship with safeguards to protect children was needed, because neither the temporary guardianship that is incident to legal custody nor the probate code guardianship were suitable options for establishing guardianships for wards for whom a permanent guardianship could not be used. Specifically, with regard to probate guardianships, the report explained:

> “The Probate Code can also fall short of meeting the ongoing safety and well-being needs of juvenile court wards. The Probate Code calls for limited court review of guardianships for minors. While guardians of adults are required to submit annual reports, there is no such requirement for guardians of minors. See ORS 125.325. Some local court rules require annual reports from guardians of minors. However, some probate departments vacate guardianships, without judicial review, when a guardian fails to file an annual report. A motion to terminate a guardianship may be filed at any time. See ORS 125.325. Upon filing a motion to vacate, the guardian must prove that the guardianship is still necessary and the guardian may be required to obtain a visitor's report, at their expense. See ORS 125.325. This procedure allows a parent, who remains unable to adequately care for the child, to file a motion to vacate simply because they are dissatisfied with the guardianship.

> “It is important to note that the above analysis of the failures of the Probate Code to adequately protect juvenile court wards may be moot. The recent appellate decision in *Kelley v. Gibson*, 184 Or. App. 343, 56 P.3d 925 (2002), states that the juvenile court lacks the authority to hear or grant a guardianship petition brought under the Probate Code.

> “ORS 419B.365 governs the establishment and monitoring of a permanent guardianship. This guardianship is appropriate when the grounds for terminating a parent's parental rights exist, but adoption is not appropriate. Once established, a parent cannot move the court to vacate the

> guardianship. The current statute requires the court to fol-
> low the Probate Code procedures to establish and review a
> permanent guardianship. As described above, the Probate
> Code procedures are ill-suited for children within the juris-
> diction of the juvenile court."

Guardianship Report at 4 (footnote omitted). The report fur-
ther provided that the objective of the proposed bill was to
create the general guardianship, and to specify standards
and procedures for juvenile courts to follow "instead of the
probate guardianship procedures." *Id.* at 5.

     Lisa Kay also explained at the Senate Committee
on the Judiciary hearing that, once SB 70 passes, the only
circumstance in which a probate code guardianship would
apply, when DHS is involved with the child, would be the
limited circumstance where both parents of a child are
deceased and DHS seeks to be appointed guardian for the
purpose of consenting to an adoption. Audio Recording,
Senate Committee on Judiciary, SB 70, Feb 5, 2003, at
1:01:35 (statements of Lisa Kay), http://records.sos.state.
or.us/ORSOSWebdrawer/Record/4179280 (accessed June 30,
2021) (responding to a question from Chair Minnis on when
chapter 125 would apply and why that circumstance was
not added to SB 70); *see* ORS 125.305 ("The Department of
Human Services may be appointed guardian of a minor if
the minor has no living parents and if no willing, qualified
and suitable relative or other person has petitioned the court
for appointment as a guardian."); ORS 125.315(1)(e) (guard-
ian may consent to the adoption of a protected person who
is a minor). In addition, at that same hearing, staff counsel
presented amendments to the bill to clarify that the inten-
tion was for juvenile courts to follow the guardianship pro-
cedures established by SB 70. Counsel explained that the
amendment deleted a section of the original proposed bill
that included a clause that allowed juvenile courts to order
different procedures for establishing a guardianship, which,
if read broadly, would defeat the intention behind SB 70.
Audio Recording, Senate Committee on Judiciary, SB 70,
Feb 5, 2003, at 1:09:00 (statements of Bill Taylor), http://
records.sos.state.or.us/ORSOSWebdrawer/Record/4179280
(accessed June 30, 2021) (explaining that the -1 amendment
deleted a section that provided, "Unless the juvenile court

orders otherwise, the procedures in this chapter for establishing guardianships are the sole means by which a person may seek to establish a guardianship of a child.").

As discussed above, before the passage of SB 70, we had concluded in *Kelley* that a juvenile court could not establish a guardianship for a ward through the probate court. Nothing in the 2003 changes to the juvenile dependency guardianship statutes suggests that the legislature intended to disturb that holding. Rather, the legislative history supports our conclusion that, by enacting comprehensive guardianship proceedings under the juvenile dependency code, the legislature intended those procedures to be the exclusive means by which a guardianship can be established for a ward in the exclusive dependency jurisdiction of the juvenile court.[5]

Grandfather argues, however, that ORS 419B.806 provided the court with authority to proceed as it did. He correctly points out that we did not decide that issue in *Kelley*, because the version of ORS 419B.806 then in effect did not apply to the facts of that case. *Kelley*, 184 Or App at 350.

ORS 419B.806,[6] which is part of the juvenile dependency code, provides that a juvenile court must consolidate

---

[5] We note further that, by proceeding under the juvenile code guardianship statutes, indigent parents will have access to the established statutory right to appointed counsel for guardianship proceedings—proceedings which significantly invade the parent-child relationship. *See* ORS 419B.205 (appointment of counsel for parent or legal guardian). Although we do not reach the issue, mother asserts that her rights under Article I, section 20, of the Oregon Constitution were violated in this case when the court forced her to proceed unrepresented in the guardianship portion of the proceedings, although the proceedings had the same consequences as proceeding under the juvenile guardianship statutes for which she had that statutory right to appointed counsel. *See Zockert v. Fanning*, 310 Or 514, 523-24, 800 P2d 773 (1990) (indigent father had right to appointed counsel for ORS chapter 109 adoption proceeding, which had the same effect as terminating his parental rights as under *former* ORS chapter 419). Proceeding under the juvenile code, when the ward is within the exclusive jurisdiction of the juvenile court, avoids such potential violations.

[6] ORS 419B.806 provides, in part:

"(1) As used in this section, 'consolidated' means that actions are heard before one judge of the circuit court to determine issues regarding a child or ward.

"(2) In any action filed in the juvenile court in which the legal or physical custody of a child or ward is at issue and there is also a child custody,

for decision with a single judge juvenile court matters, where the physical custody of the child is at issue, with, among other matters, a guardianship proceeding that involves custody or visitation of the same child. Among other procedural provisions, the statute provides that the consolidation "does not merge the procedural or substantive law of the individual actions," that "all pending issues pertaining to the actions subject to the order [of consolidation] shall be heard together in juvenile court," and that "[t]he court shall hear the juvenile matters first unless the court finds that it is in the best interest of the child or ward to proceed otherwise." ORS 419B.806(3), (4).

What that statute does not provide is a means by which a juvenile court may sidestep the juvenile dependency guardianship proceedings altogether in favor of proceeding as a probate court in accordance with the probate code. As set out above, the legislature intended to avoid that happening through the 2003 changes to the juvenile guardianship statutes, precisely because the probate code is an ill-suited means for establishing and monitoring guardianships for wards within the exclusive jurisdiction of the juvenile court. The general consolidation statute in the juvenile code does not permit what the specific, comprehensive guardianship

parenting time, visitation, restraining order, filiation or Family Abuse Prevention Act action involving the child or ward in a domestic relations, filiation or guardianship proceeding, the matters shall be consolidated. Actions must be consolidated under this subsection regardless of whether the actions to be consolidated were filed or initiated before or after the filing of the petition under ORS 419B.100.

"(3) Consolidation does not merge the procedural or substantive law of the individual actions. Parties to the individual consolidated actions do not have standing, solely by virtue of the consolidation, in every action subject to the order of consolidation. Parties must comply with provisions for intervention or participation in a particular action under the provisions of law applicable to that action.

"(4) Upon entry of an order of consolidation, all pending issues pertaining to the actions subject to the order shall be heard together in juvenile court. The court shall hear the juvenile matters first unless the court finds that it is in the best interest of the child or ward to proceed otherwise.

"(5) A judge shall make and modify orders and findings in actions subject to the order of consolidation upon the filing of proper motions and notice as provided by law applicable to the actions. Any findings, orders or modifications must be consistent with the juvenile court orders, and persons who were parties to the juvenile court action may not relitigate issues in consolidated actions."

statutes in the juvenile code otherwise prohibit. *See, e.g.*, *State v. Guzek*, 322 Or 245, 268, 906 P2d 272 (1995) ("[W]hen one statute deals with a subject in general terms and another deals with the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, while giving effect to a consistent legislative policy.").

In sum, the court did not have authority to establish a guardianship for A under the probate code while A was a ward within the dependency jurisdiction of the juvenile court. It was instead required to proceed under the juvenile dependency guardianship statutes. Accordingly, we reverse and remand the limited judgment entered under the probate code appointing grandfather as guardian of A.[7]

Reversed and remanded.

---

[7] In so holding, we do not perceive a conflict between our holding in this case and our holding in *Smith*, in which we concluded that DHS, acting as a ward's general guardian under ORS 419B.370, could seek an appointment of a limited guardian under ORS 125.305 for the purpose of making health care decisions for the ward. *See Smith*, 205 Or App at 157-58, 158 n 3 (distinguishing *Kelley* and stating, "Although ORS 419B.373(4) permits DHS to authorize 'extraordinary care' in health care emergencies, that statute does not prohibit DHS from delegating that authority pursuant to ORS 419B.376(5). In fact, as we explain above, because DHS is exercising juvenile code authority in seeking a limited guardianship under ORS 125.305, nothing prevents the juvenile court from applying that statute's criteria.").