577 P.2d 714

**In the Matter of the APPEAL IN PIMA COUNTY JUVENILE ACTION NO. B-7087.**

**No. 13382-PR.**

Supreme Court of Arizona,
In Banc.

April 7, 1978.

Neighborhood Law Offices by Margaret L. Maxwell, Tucson, for appellant.

James P. F. Egbert, Tucson, for appellee.

Robert Douglas Little, Tucson, for Minor Child.

HOLOHAN, Justice.

Appellant brought this appeal from the denial of her petition to adopt Tommy McCullom. The Court of Appeals affirmed the judgment of the trial court. *In the Matter of the Appeal in Pima County Juvenile Action No. B-7087*, 118 Ariz. 437, 577 P.2d 723 (App.1977). We accepted appellant's petition for review.

The appeal involves two issues: 1) whether the trial court erred in applying Arkansas law on revocation of consent to adopt by the natural mother, Janice McCullom, and 2) whether in applying Arkansas law to the evidence the trial court abused its discretion.

In late June, 1975, W. L. and Janice McCullom were traveling with their child, Tommy, age three months, to Fort Smith, Arkansas. There they met John and Darlene McBride who were managing a motel in Fort Smith. Mr. McCullom convinced his wife to leave the child with the McBrides so they could adopt him as their own. On July 5th the two couples contacted Mr. Wayne Harris, a Fort Smith attorney. The attorney carefully explained the procedure for adoption under Arkansas law. At this time the McCulloms signed a consent form for Tommy's adoption which stated specifically that the consent was in accord with the

laws of Arkansas.[1] The attorney made it clear to the parties that he would proceed in an Arkansas court and that prior to the entry of any interlocutory order the adoption would be meaningless. An original and three copies of the consent to adopt were apparently signed, the original being retained in Mr. Harris's file. No copy was received by the McBrides. The consent did not authorize the taking of the child from Arkansas.

The parties subsequently left the office and on July 7, 1975, the attorney received a call from Mrs. McBride saying that Mr. Harris's service would no longer be necessary, leaving the impression that the McCulloms had taken the child back, but the McCulloms had not taken the child back and had in fact left Fort Smith. The attorney then closed his file and proceeded no further with the adoption.

A short time later the McBrides left with Tommy to go to Iowa. Later they came to reside in Tucson. In December, 1975, the McBrides received a letter from Mr. James Dunn of the same law firm as Mr. Harris, saying that Mrs. McCullom wanted her child back and threatening the McBrides with criminal prosecution for kidnapping the child. Mrs. McCullom had been attempting since September, 1975, to find the McBrides to advise them of her decision not to allow her son to be adopted.

After receiving the letter from the attorney for Mrs. McCullom, the McBrides filed a petition to adopt. In January, 1976, the McBrides separated and a decree of dissolution of marriage was entered on February 25, 1977. Mr. McBride subsequently withdrew from the petition to adopt and Mrs. McBride proceeded in her sole capacity.

Mrs. McCullom filed a response in opposition to the petition to adopt. The above related facts were presented at the hearing. It was also shown that Janice McCullom was on probation for attempted murder.

However, evidence was submitted from the Pearl River County Department of Public Welfare that Mrs. McCullom was taking good care of her other child who was apparently two months of age, and generally conducting herself properly.

The trial court ruled that there was no valid consent to adopt because it had been revoked. The petition to adopt was denied, and the child was ordered returned to his natural mother.

Appellant McBride contended that a valid consent to adopt had been given by the natural parents and that Arizona law should be applied to the attempted revocation. Appellant argued that if Arizona law was applied the revocation was not proper. Respondent McCullom contended that Arkansas law should apply, in which case the revocation of consent would be effective.

We agree with the ruling of the trial court and the Court of Appeals that Arkansas law governed the revocation of the consent to adopt in this case and that it was timely.

Appellant argues that the law of Arizona provides that after a child is in custody of the adoptive parents the consent of the natural parents is irrevocable absent fraud, duress or undue influence. *See In re Holman's Adoption,* 80 Ariz. 201, 295 P.2d 372 (1956); *Anonymous v. Anonymous,* 23 Ariz. App. 50, 530 P.2d 896 (1975); *Acedo v. State,* 20 Ariz.App. 467, 513 P.2d 1350 (1973). In contrast, under Arkansas law a consent can be revoked prior to the entry of an interlocutory decree [2] depending upon numerous factors such as: circumstances under which consent is given; the length of time elapsing between consent and its revocation; the conduct of the parties between the giving of consent and its attempted withdrawal; whether the withdrawal was made before or after institution of adoption proceedings; the nature of the natural par-

---

1. Although there is no direct testimony as to residence or domicile of the McCulloms, the record suggests that the McCulloms resided in Mississippi.

2. The Arkansas adoption statutes provide for a bifurcated proceeding consisting of an interlocutory decree and a final decree, similar to a final decree issued in Arizona. *See* Ark. Stat. Ann. § 56–104 *et seq.*

ents' conduct with respect to the child both before and after consenting to its adoption; and in some cases the relative abilities of both the natural parents and the adoptive parents to provide for the child. *See Schrum v. Bolding,* 260 Ark. 114, 539 S.W.2d 415 (1976); *Combs v. Edmiston,* 216 Ark. 270, 225 S.W.2d 26 (1949).

Under the particular circumstances shown by the evidence we believe that it would be unjust to apply Arizona law to determine the effectiveness of the revocation of consent to adopt. From the beginning it was expected that the adoption would take place in Arkansas pursuant to the law of that state. The consent form was captioned and drawn for filing in an Arkansas court. The parties had been advised of their rights based upon Arkansas law. Under Arkansas law the grounds for withdrawal of consent prior to the entry of an interlocutory decree were more liberal than in Arizona.

We believe that the Court of Appeals was correct in not applying the rule of *In re Holman's Adoption, supra,* to the facts of this case. The *Holman* rule was meant to apply to instances where the parties intended the adoption to take place in Arizona, or where there was a general consent to adoption without reference to the place of adoption.

■ We conclude that the court below did not abuse its discretion in allowing withdrawal of consent. Such factors in determining whether revocation of consent is effective in Arkansas include: 1) circumstances under which the consent is given; 2) the length of time elapsing between consent and the attempted revocation; 3) the conduct of the natural parents between the time of consent and the attempted revocation; 4) whether revocation was attempted before adoption proceedings were instituted; 5) the nature of the natural parents' conduct with respect to the child, and 6) the relative abilities of each of the parents to care for the child. *See Combs v. Edmiston,* 216 Ark. 270, 225 S.W.2d 26 (1949). Although the record indicated that the natural mother was on probation for attempted murder, the record also contained a favorable report which stated that the natural mother had taken good care of her other child. The record further discloses that when she gave the child to Mrs. McBride she did so under the influence of her husband. Approximately two months after the natural mother gave the child to the McBrides she sought his return. The several moves by the McBrides thwarted her efforts to contact them until December. Moreover, her demand, through the attorney, for the return of Tommy occurred before the institution of adoption proceedings in Arizona. In addition, the record indicates that Mr. McBride, as well as Mr. McCullom, were in prison and the McBride divorce dissipated the appearance of familial stability of the adoptive parents.

■ Finally, appellant suggests that revocation of consent was improper under the doctrine of equitable estoppel. *See Combs v. Edmiston,* 216 Ark. 270, 276, 225 S.W.2d 26, 29 (1949), *citing Lee v. Thomas,* 297 Ky. 858, 181 S.W.2d 457 (1944); *Wyness v. Crowley,* 292 Mass. 461, 198 N.E. 758 (1935). In *Lee* and *Wyness* the natural parent waited for approximately fifteen months before attempting to revoke consent. However, in the instant case the natural mother, in an attempt to learn the whereabouts of her child, contacted her attorney approximately two months after surrendering Tommy to the adoptive parents and the attorney in turn notified the prospective adoptive parents approximately six months after surrendering the child. The delay was occasioned by the traveling of the McBrides. Because the delay is much less in the instant case than the delay which occurred in the cases cited by appellant, and because there was a good reason for the delay, we believe equitable estoppel is not applicable. We find no abuse of discretion by the trial court in not finding equitable estoppel.

The opinion of the Court of Appeals as supplemented is approved, and the judgment of the Superior Court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS, and GORDON, JJ., concurring.