Argued and submitted May 8, review dismissed as improvidently allowed July 18, 1996

In the Matter of the Marriage of

Rosellen NEVILLE,
*Respondent on Review,*
*and*

Billy CARROLL,
*Petitioner on Review.*

(CC DR93-0688; CA A85354; SC S42810)

919 P2d 488

F. de la Puente Allen, Salem, argued the cause and filed the petition for petitioner on review.

Richard D. Rodeman, Corvallis, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

MEMORANDUM OPINION

Review dismissed as improvidently allowed.

Fadeley, J., concurred and filed an opinion.

** Unis, J., retired June 30, 1996, and did not participate in this decision.

**FADELEY, J.,** concurring.

I concur in the dismissal of this case as one in which review was improvidently allowed, because the issue that petitioner on review wants this court to address was not raised in the trial court or argued to the Court of Appeals. This concurrence expresses my somewhat differing reasons for why the decision of the Court of Appeals, reversing the circuit court and remanding the case to that court, is correct.

In this child visitation case, the issue is whether the Uniform Child Custody Jurisdiction Act (UCCJA, or Act) permits an Oregon court to avoid exercising jurisdiction over a child visitation in the circumstances of this case. Those circumstances include that the child has lived in Oregon since 1985, attending all her schooling here. Her mother, friends, counselor, therapist, doctor, and closest family, other than her father, are in Benton County, Oregon.

Mother and father divorced in Texas in 1982, two months after the birth of the child, who has never lived with father because of the predivorce separation of her parents. Mother and child last lived in Texas in 1983, although there were occasional visits to Texas with mother through 1987, and an additional week in 1992 as detailed below.

In 1992, mother entered the Texas courts to enforce past-due child support and to increase the amount as the child entered adolescence.[1] Father responded by filing in the Texas court a petition to change custody of the child to him and, alternatively, for visitation. Mother filed a special appearance, which was not ruled on until after two substantive visitation orders were entered by the Texas court.[2] The first was based on a stipulation[3] while the special appearance

---

[1] The initial Oregon contact to enforce father's child support obligation was made by Oregon state agencies bringing a proceeding in Texas. At that time mother and, more importantly, the child, had lived in Oregon six years.

Child support litigation is not a custody determination for which UCCJA jurisdiction is required or which confers jurisdiction under the Act. ORS 109.710(2) excludes support matters from the provisions of the Act.

[2] ORS 109.710(2) defines a "custody determination" as a court order and gives instructions providing for custody, including visitation rights. However, a custody determination does not include a decision related to child support or other monetary obligations. *Ibid.*

[3] *See Hoffman v. City of Portland,* 294 Or 150, 156, 654 P2d 1106 (1982) ("A 'jurisdictional' requirement * * * cannot be waived by stipulation." (citation omitted)).

was still pending. It provided for daytime visitation only every day for a week in Oregon and daytime only on consecutive days for a second week in Texas.

The second order was a custody determination, also entered before the special appearance was ruled on. Over the objection of mother, this order was for several consecutive weeks of overnight or 24-hour-a-day, visitation in Texas during the summer of 1993. After entering an order for visitation for the summer of 1993 on August 10, 1992, the Texas court denied mother's special appearance by order December 12, 1992. That court justified its jurisdiction in 1992 by stating that there had been in effect a "termination" of father's rights by her action. The basis announced for this ruling makes it clear that mother had never agreed to the Texas court's jurisdiction, although cooperating with father and that court by agreeing to daytime visitation in Oregon and in Texas. Mother, giving specific reasons related to the child's Oregon family activities, declined father's suggestion that summer visitation occur in June or during the first weeks of July, but left open visitation in August. Father refused to agree with mother's preferences about the month during which summer visitation would occur in 1993 and tried to force visitation during early July by mailing an airline ticket with specific travel dates in it for the use of the child to go to Texas. At that time the child had been in Oregon continuously for eight years, including for well over six-months since a brief, supervised daytime visit in Texas in the summer of 1992.

In 1993, mother filed this proceeding to enroll the Texas decree in Oregon, under ORS 109.850 to 109.860, and simultaneously moved the Oregon circuit court to modify the decree's visitation terms to require that visitation be in Oregon and be exercised at times that did not disrupt family activities of the child in Oregon. The Oregon court, on a *forum non conveniens* basis, initially abated proceedings on mother's motion to modify visitation.[4]

Thereafter, mother was threatened with arrest on a fugitive warrant from Texas and with extradition to that

---

[4] There is no indication that the trial court ruling treats father's participation in this Oregon litigation as other than a general appearance.

state if she persisted in requiring that the summer visitation be at a time that did not interfere unnecessarily with the child's Oregon family life, as she saw it. The district attorney of McLennan County, Texas, wrote to mother (who was represented) directly, stating that she was guilty of a felony punishable by not less that two years incarceration under Texas law and that, unless she made arrangements for 25 days of unsupervised visitation during the summer of 1994, prosecution would go forward.[5] The district attorney, by letters dated February 8 and March 21 of 1994, gave mother 30 days to make progress on the issue of 1994 summer visitation and stated that, failing that progress, an arrest warrant and a "Governor warrant" for her "extradition to Texas" would be issued.

The Oregon court explained its October 1993 decision declining jurisdiction as follows:

> "Probably the three most significant factors are that the Texas Court granted the original dissolution and entered the original custody order [cf. *Stewart v. Stewart*, 83 Or App 675, 732 P2d 951 (1987)]; that the father has resided in Texas since the Decree was granted; and that the Texas Court has in the past year and a half conducted two hearings on the same visitation issue.

> "This Court is satisfied that it should decline to accept jurisdiction. Rather than just dismiss this matter, the Court will enter an order abating our proceeding pending the outcome of the Texas proceedings. This Court will be available, if requested by the Texas Court, to help resolve the matter.

> "Mr. Rodeman makes a very persuasive argument for this Court to accept jurisdiction. Again, as the Court mentioned, if these arguments were presented to the Court before the first Texas hearing, this Court would probably have accepted jurisdiction. But, at this time, this Court should and will decline to exercise jurisdiction."

In July of 1994, the circuit court in Oregon entered a "Final Order of Dismissal," declining "to exercise jurisdiction

---

[5] There was, however, no child custody *proceeding* pending in Texas after the trial court in McLennan County denied, in December 1992, mother's objection to jurisdiction.

under ORS 109.770" and granting father's motion to dismiss, without a hearing as to the best interests of the child or on mother's motion for modification.

On mother's appeal, the Court of Appeals did not agree that the UCCJA requires or prefers that a home state of eight years' duration should cede, on a *forum non conveniens* basis, jurisdiction to another state to determine custody, even though it is the original decree state. It held that the Oregon court had jurisdiction under the Act, among other holdings.

Jurisdictional issues under the UCCJA are made clear by an examination of the text of three sections of the Act. They are the text and context to which we first turn under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993), in order to discern the intention of the legislature. We start with the text of one section of the UCCJA, ORS 109.770, because it is that section on which the trial court apparently rested its decision to abate, and then dismiss, the Oregon proceeding and to cede jurisdiction to the Texas civil court.

We deal with the statute subsection by subsection. ORS 109.770(1) provides:

> "A court which has jurisdiction under ORS 109.700 to 109.930 to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree *if* it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case *and* that a court of another state is a *more appropriate* forum." (Emphasis added.)

That subsection requires consideration of three points. First, there must be a court that has jurisdiction under the UCCJA. Second, there must be a finding that the court having jurisdiction is an inconvenient forum for making a custody determination under the circumstances of the specific case. Third, the court must find that a court of another state is also, in the conjunctive, "more appropriate."

The first point — is there jurisdiction? — requires a review of ORS 109.730, a part of the Act that deals specifically with jurisdiction. Subsection (1) of ORS 109.730 states:

"(1)   A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a)   This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement * * * and the child is absent from this state [for certain reasons]; [or]

"(b)   It is in the best interest of the child that a court of this state assume jurisdiction because the child and the parents of the child, or * * * at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]"

As is clear under the facts of this case, both the independent grounds for jurisdiction stated in the text just quoted apply as to Oregon.

The child (and the child's mother) has lived in the state of Oregon since 1985, continuously. Oregon is the child's home state under ORS 109.730(1)(a). It also is evident that the child (and the child's mother) have a significant connection with the state where the most evidence concerning the child's condition and situation is available, given that the child has been in Texas only once, briefly, during the last nine years. The first point of the text of ORS 109.770(1) is clearly met. Oregon has jurisdiction to make a modification decree related to a custody decision such as visitation.

This court in the past has interpreted and applied ORS 109.730, which is the basis for Oregon jurisdiction. In *Settle and Settle*, 276 Or 759, 766-67, 556 P2d 962 (1976), this court pointed out:

"It is clear that the Commissioners intended to prevent the proliferation of jurisdiction. It is also clear, however, that they did not intend that the existence of home state' jurisdiction in one state (in the present case, Oregon) should automatically preclude the existence of jurisdiction in another state (in the present case, Indiana). Jurisdiction in another state will exist when it is in the best interests of the children because they and a parent have a significant connection with that state and because there is available in

that state substantial evidence concerning the children's present or future circumstances. The above comment indicates that the requirement of the availability of substantial evidence' should be understood to require optimum access to relevant evidence."

In *State ex rel Torres v. Mason*, 315 Or 386, 393, 848 P2d 592 (1993), this court reviewed jurisdiction under the UCCJA as follows:

"ORS 109.730(1)(b) [[UCCJA] § 3(a)(2)], * * * vests Oregon courts with jurisdiction if the child and at least one contestant have a 'significant connection' with Oregon *and* substantial evidence exists in Oregon. Whether substantial evidence exists in Oregon is irrelevant, however, if the child does not have a significant connection to this state.

"* * * * *

"[C]hild had lived his whole life in Washington, only to move to Oregon one month before the adoption proceeding was commenced. Under the facts of this case, one month is not a sufficient passage of time to develop a significant connection under ORS 109.730(1)(b) [§ 3(a)(2)]." (Emphasis in original; footnote omitted.)

And, in *Stubbs v. Weathersby*, 320 Or 620, 624, 892 P2d 991 (1995), the court summarized and held that:

"We first address whether the trial court had jurisdiction under the UCCJA, ORS 109.700 to 109.930. * * * *State ex rel Torres v. Mason*, 315 Or 386, 848 P2d 592 (1993). [Footnote omitted.]

"The UCCJA provides four bases for jurisdiction: (1) home state' jurisdiction, (2) significant connection' jurisdiction, (3) emergency' jurisdiction, and (4) default' jurisdiction. ORS 109.730(1). Each basis of jurisdiction under the UCCJA depends on the factual circumstances surrounding the child custody proceeding. To determine jurisdiction, we consider the facts as of the date that the * * * proceeding was commenced. *Torres*, 315 Or at 393 n 6."

Oregon is the child's home state, and the most substantial evidence concerning the condition of the *child* is present in Oregon. With a solid basis for jurisdiction in Oregon established, we can turn to whether the Oregon court was entitled under the statutory law to make a finding of

inconvenient forum. The second and third points of subsection (1) require that the court find both that it is inconvenient and that another court is "more appropriate." The remaining subsections of ORS 109.770 speak to those two points, sometimes using mandatory language and other times using permissive language.

Subsection (3) requires that the court with jurisdiction, *i.e.*, the Oregon court, "shall consider if it is in the interest of the child" to allow another state to assume jurisdiction. This consideration is stated in mandatory terms. That subsection continues that, in performing the mandatory consideration the court having jurisdiction "may take into account" enumerated factors, among others. The mandatory language "shall" requires that the standard "in the interest of the child" be the lodestar for this decision. By use of the permissive verb "may," the statute indicates that the factors listed in conjunction with that verb are for guidance of the court in arriving at its mandatory consideration based on the best interest of the child.

The permissive factors include various paragraphs of subsection (3). Paragraph (a) inquires whether another state is, or recently was, the child's home state. The answer is "no" in this case. Paragraph (b) inquires whether another state has a closer connection with the child, the family of the child, or one or more of the contestants. Remembering that "interest of the child" is the matter that must be considered, the answer to this question also is "no," notwithstanding the fact that father, as one of the contestants, has a closer connection with Texas. The child does not. The mother does not. The family of the child, in the form of her siblings, does not.

Paragraph (c) of subsection (3) asks whether substantial evidence concerning the *child* is "more readily available" in another state. Again, the answer is "no." Although there is some evidence in another state, it is of substantially less breadth and significance than the evidence available in Oregon.

Paragraph (d) asks if the parties have agreed on another forum but conditions that question on that forum's being "no less appropriate." There is no finding here that the

parties have agreed on another forum, and certainly no finding that such a forum is no less appropriate than the forum with home state and best-interest-of-the child jurisdiction under ORS 109.730(1)(a) and (b). No proceeding is pending elsewhere.

Paragraph (e) injects into the consideration of what is in the best interest of the child the permissive factor of whether exercise of jurisdiction, in this case on a home state basis, "would contravene any of the purposes stated in ORS 109.720(1) and (2)." I shall return shortly to an examination of the effect of ORS 109.720, brought into the decision by this cross-reference. However, before turning to that cross-reference, I continue the consideration of the various subsections of ORS 109.770.

Subsection (5) provides, after iterating that the Oregon court with jurisdiction must find both that it is an inconvenient forum and that the court of another state is "more appropriate," that the Oregon court may stay the proceedings upon condition that a custody proceeding be commenced promptly in another state. This subsection was not dealt with, in its own terms, by findings of the trial court, as pointed out in the discussion of subsection (1), above.

Subsection (8) also emphasizes this factor by iterating that a court must find the court of the other state "to be the more appropriate forum" before it may act upon a finding that the Oregon court is an inconvenient forum.

To summarize, the trial court did not make findings covering the statutory requirements of ORS 109.770. It did not find that the court of another state is a more appropriate forum based on the factors stated, especially not from the point of view of the "best interest of the child." Indeed, there was no evidence upon which the court could have found that several of the suggested factors were established as to the Texas court. The mere fact of prior litigation in Texas does not make it now, or recently, the home state of the child. There is in that state no closer connection with the child or the child's family. Substantial evidence concerning the child's present or future care, protection, training, and personal relationship is not found to be more readily available in Texas, nor is there any evidence upon which such a finding

might have been entered by implication. The evidence indicates, instead, that those items are more readily available in Oregon.

I turn to an examination of the cross-reference, in subsection (3)(e) of ORS 109.770, to see whether exercise of jurisdiction by Oregon would "contravene" any of the purposes stated in ORS 109.720(1) and (2). Subsection (1)(b) of ORS 109.720 states that a purpose of the UCCJA is to promote cooperation with the courts of other states for a specific purpose: "to the end that a custody decree is rendered in that state which can best decide the case *in the interest of the child*." (Emphasis added.) As we have seen, the child is best served by home state jurisdiction in Oregon.

Subsection (1)(c) of ORS 109.720 repeats factors stated in subsection (3)(c) of ORS 109.770. Oregon is the state where the evidence concerning the child is most readily available. ORS 109.720(1)(c) states that it is a purpose of the UCCJA that courts of this state, when it is the home state, decline the exercise of jurisdiction only when the child and the family of the child have a closer connection with another state. A closer connection elsewhere is not present in this case. That degree of connection remains in the longstanding home state, Oregon.

Paragraph (d) of subsection (1) states the purpose of the Act is to discourage continuing controversies in the interest of greater stability of home environment and of secure family relationships *"for the child."* (Emphasis added.) Threatening the mother with contempt and jail in Texas unless she complies does not discourage continuing controversies over child custody, which includes visitation matters. It does not appear to be in the interest of greater stability of the home environment of the child to require mother to travel to a place where she is threatened with incarceration. Nor does it promote secure family relationships of the child for the child to know that the child's existence and relationship with the mother provide a foundation for the threat that mother will be jailed.

Subsection (1)(a) speaks to avoiding jurisdictional competition and conflict with courts of other states, in order

to prevent shifting of children from state to state with harmful effects on their well-being. Because Oregon is the home state under the UCCJA, and thus has jurisdiction of all custody proceedings and determinations unless some other state is factually "more appropriate," it cannot be that subsection (1)(a) means that Oregon as home state should cede jurisdiction to another state that is not the home state because that other state competes with and offers conflict to Oregon's home state jurisdiction. *See Settle*, 276 Or at 766 (quoting the commentary of the Commissioners on Uniform Laws on the point). Subsection (1)(a) is instead an adjuration to the courts of states that are not the home state of the child to avoid competition and conflict by declining to exercise jurisdiction without home state status.

Paragraph (f) of subsection (1) of ORS 109.720 states the additional purpose of the Act is to avoid "relitigation of custody decisions of other states * * * in so far as feasible." The present proceeding starts by certifying and enrolling the last Texas decree modifications in Oregon. The present need arose after that modification was entered, and it arose because that modification did not specify the dates for visitation in the summer of 1993 or thereafter. Nor did the modification describe how to resolve disputes that might occur between the parents on the details surrounding visitation.

Subsection (1)(g) appears to be a companion to paragraph (f), because it provides that the Act is in part to "[f]acilitate the enforcement of custody decrees of other states." Subsection (1)(f) does not suggest that avoiding relitigation requires ceding jurisdiction to the other state that is not the home state of the child. As this case demonstrates, enforcement or adjustment is frequently best accomplished where the custodial parent and the child reside, not at a great distance. As can be seen, none of the factors in subsection (1) of ORS 109.720 dictates, or necessarily suggests, the inconvenient forum ruling made by the trial court in the child's home state, Oregon. Instead, examination of those factors in the light of the facts of this case indicates that declining to exercise home state jurisdiction is not in accordance with the Act. The Act does not suggest declining in these circumstances.

ORS 109.720(2), also cross-referenced in the inconvenient forum section, is a guide to construction. It provides that ORS 109.700 to 109.930, being the sections comprising the UCCJA, "shall be construed to promote the general purposes stated in this section [ORS 109.720]." As just indicated, the general purposes in the section are promoted by retaining home state jurisdiction. The home state can better avoid unnecessary relitigation and can better fashion ways to enforce custody decrees of other states, where that is appropriate.[6]

The Act contains a major premise:

> The UCCJA focuses on the best interest of the child, not primarily the interests of the mother resident in Oregon or the father resident in Texas, although each has a strong interest in the outcome.

The decision of the trial court apparently viewed the matter as litigation between the parents, with insufficient attention to the provisions of the UCCJA and its focus. However, the child is not a chattel or possession of either parent, or of both, under the Act. Based on the focus of the Act, a focus that the Court of Appeals correctly recognized, it is not necessary to decide whether or not a Texas court may have jurisdiction to determine custody in order to hold that Oregon clearly has that jurisdiction, and also has a duty under the Act to exercise it in the factual circumstances of this case. The Act requires that courts of Oregon, the home state of the child, supervise and set parameters for visits with the child.[7]

The Act provides both for enforcement of the decree of another state and for modification of that decree, when the other state does not "now have jurisdiction under the jurisdictional prerequisites substantially in accordance with ORS 109.700 to 109.930." ORS 109.840. The enforcement provision, ORS 109.830, also requires that the decree that is to be enforced be one that is based on an assumption of jurisdiction under statutory provisions substantially in accordance with

---

[6] No criminal extradition need be contemplated to bring mother within the power of an Oregon court.

[7] The Act is the law of both states.

the UCCJA. In the alternative, factual circumstances surrounding that decree may meet the jurisdictional standards of the Act. ORS 109.830.

ORS 109.840(1) speaks in terms of whether the court that rendered the custody decree "now" has jurisdiction under standards set forth in the Act. If no other court "now" has jurisdiction, this court may modify or enforce. *Id.* Context adds additional support to that proposition. ORS 109.830 refers to enforcement of the decree of the court of another state that acted under the jurisdictional standards like those of the UCCJA, but contemplates enforcement only "so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of" the UCCJA. That implies, when read in conjunction with ORS 109.840, that the enforcing court may, insofar as the UCCJA is concerned, modify the decree of the other court.

In ruling, courts in Oregon will honor fully any jurisdiction that the Texas court may have had. But, under the Act, Texas does not now[8] have jurisdiction in the interests of the child under criteria substantially similar to that in the UCCJA, as discussed above. It is not a state to which the Oregon court, as a court of the child's home state, may appropriately cede jurisdiction on an inconvenient forum basis, because Texas does not now have a claim to jurisdiction consistent with the standards of the Act. Although it is the law of both states, the Act is not law unique to a state with the great heritage of the state of Texas, nor is it unique to the state of Oregon. The Act instead is a uniform Act for solving problems like that presented here. Texas can claim jurisdiction only by denying the home state jurisdictional effect of the Act, which Texas also has adopted, that is, by not using or honoring Texas law.

Two prior hearings, while a special appearance was pending but not ruled upon, do not make Texas the more appropriate forum, nor the forum in which the best interest of the child may best be considered under the standards of

---

[8] Jurisdiction under the UCCJA is assessed as of the filing of the petition under consideration here, mother's motion for modification. Filing is normally the time when the proceeding is commenced, and commencement is the point in time for assessing jurisdiction. *Stubbs v. Weathersby*, 320 Or 620, 627, 892 P2d 991 (1995).

the Act. Yet the two hearings are the only basis on which the Oregon trial court placed its ruling in this case that in any way relates to the Act. Original decree jurisdiction does not continue over the child when the child has acquired lawfully, and without parental kidnapping or the bad faith on the part of the custodial parent, a new home state under the Act. If Texas insists that initial decree jurisdiction continued as to the child custody determination, then it is not exercising jurisdiction under the standards of the Act, which are its law also, and for those additional reasons is not eligible for inconvenient forum deference.[9] I conclude that the Oregon court has jurisdiction in relation to the modified child custody order of the decree state now certified in Oregon.

---

[9] I decline to decide the case wholly upon the Parental Kidnapping Prevention Act as father now requests. On the other hand, I also decline to consider that request a waiver of all his previous arguments under the UCCJA.

This case was decided in the trial court and argued in the Court of Appeals on the basis of the provisions of the UCCJA as it exists in Oregon. The petition to this court for its review argued both on the basis of the Oregon UCCJA, and the PKPA, in that the petition argued that the federal law required continuing jurisdiction in the state of the original decree of divorce so long as one parent remained a resident of that state. However, in oral argument to this court, father argues only on the basis that the federal statute is designed to protect against thwarting a custody decision by interstate kidnapping of minor children. 28 USC § 1738A (PKPA).

The PKPA does not by its express terms preempt, or contradict, the jurisdictional principles of the UCCJA, which had been adopted by all states when the PKPA was enacted and on which the Oregon court entered its ruling, although the PKPA may restrict modifications. In fact, it repeats many of the jurisdictional points of the UCCJA.

The petition for review relied on *Grubs v. Ross*, 291 Or 263, 630 P2d 353 (1981). *Grubs* dealt with a factual pattern of kidnapping of the child and transporting the child to another state. Because of the parental kidnapping from the decree state, this court held that home state jurisdiction was not acquired under the UCCJA in Oregon. That is not the situation here. Here, we have two states whose laws include the UCCJA that prefer "home state" jurisdiction. The federal act does not require jurisdiction in Texas in that circumstance. *See Dennis v. Dennis*, 366 NW2d 474 (ND 1985), and *Nielsen v. Nielsen*, 472 So 2d 133 (La App 1985) (holding that the original decree state where one parent continued to live was, notwithstanding the PKPA, an inconvenient forum that must abjure exercise of jurisdiction under that UCCJA inconvenient forum provisions, because another state unquestionably had been the home state of the child (for more than three years in the North Dakota case and over one year in the Louisiana case)); *see also Wilson v. Gouse*, 441 SE2d 57, 61-63 (Ga 1994) (Georgia courts had jurisdiction to modify an Ohio court's earlier custody decree because, under the law of Ohio, *i.e.*, its UCCJA, Ohio did not presently have jurisdiction in the interest of the child, because Ohio was not the home state, nor the substantial evidence state); *but see Michalik v. Michalik*, 172 Wis 2d 640, 494 NW2d 391 (1993) (where no claim that law of decree state indicated jurisdiction was in another state on a home state basis, Wisconsin trial court properly declined to modify Indiana visitation decree while father remained resident of Indiana).